## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LEA FAMILY PARTNERSHIP LTD.,

     Plaintiff,

v.                          Case No: 8:16-cv-3463-T-30AAS

CITY OF TEMPLE TERRACE,
FLORIDA, LEN VALENTI and LEN
VALENTI,

     Defendants.

_____

## ORDER

THIS CAUSE comes before the Court upon Defendant City of Temple Terrace's Motion to Dismiss Plaintiff's Complaint (Doc. 7), Defendant Len Valenti's Motion to Dismiss Plaintiff's Complaint (Doc. 8), and Plaintiff's Responses in Opposition (Docs. 12 & 13). Upon review, the Court partially grants Defendants' Motions. The Court will not dismiss Plaintiff's Complaint (Doc. 4) because Count I sufficiently states a claim that the City's Rental Housing Program violates the unconstitutional conditions doctrine. The Court will dismiss Count II without prejudice and the claims against Valenti with prejudice.

## FACTUAL BACKGROUND

Plaintiff Lea Family Partnership Ltd. ("Lea Family") is a Florida Limited Partnership that owns rental homes in Temple Terrace, Florida. In November 2016, Lea Family filed this purported class action against the City of Temple Terrace ("the City") and Len Valenti ("Valenti"), the City's Housing Compliance Officer, under section 1983. Lea

Family challenges the constitutionality of the City's Rental Housing Program under the Fourth and Fourteenth Amendments. Although Lea Family filed its Complaint (Doc. 4) in Florida state court, the City timely removed the case to this Court.

*The City's Rental Housing Program*

The City's Rental Housing Program ("the Program") is codified in the City's Code of Ordinances at sections 8-133 to 8-137. The Program applies to one-family, two-family, and three-family dwelling units in the City that the property owner rents to others. Temple Terrace, Fla., Code of Ordinances § 8-133(a). It does not apply to dwelling units in which the property owner resides. *Id*. The City instituted the Program in order to (1) preserve neighborhoods, (2) protect property values, (3) protect renters from undisclosed code violations, and (4) safeguard public health and safety by protecting residents from problems caused by substandard conditions. (Doc 4, Ex. B.)

In order to rent a dwelling unit, the property owner must obtain an annual rental permit from the fire department. § 8-134(a). The owner applies for the permit by completing and submitting a form provided by the fire department. *Id*. The ordinance states that, "[b]y applying for a permit, the property owner consents to periodic inspections of the dwelling unit for violations of the minimum housing code and other related codes at any reasonable time." *Id*. Upon receipt of the owner's application, the City issues an annual rental permit to the owner and will not revoke it if the owner pays a rental permit fee, provides a sworn statement that the dwelling unit is not in violation of the applicable codes, and the City's inspections of the unit confirm compliance. § 8-134(b).

The Code describes the required inspections as "periodic" but does not otherwise explain how frequently they must occur. § 8-135(a). However, a fee schedule published by the fire department states that "inspections will be conducted on an annual basis by zone." (Doc 4, Ex. E.) If a unit is occupied, the City will not conduct an inspection of the unit unless it has obtained the consent of the occupant or a warrant. § 8-134(a).

The Program prohibits a property owner from leasing a dwelling unit if the owner has not applied for a rental permit and paid the required permit fee. § 8-134(d). If the City has reason to believe that the owner is leasing a unit without a permit, the City must give the owner notice of the Program's requirements and thirty days to comply. *Id*. If the owner fails to apply for the permit or pay the fee within the requisite timeframe, the City can pursue enforcement proceedings and penalties against the owner. *Id.* These penalties may include the imposition of fines or even criminal charges. *Id.*

*Lea Family's Allegations*

Lea Family alleges that the Program—both on its face and as applied—violates property owners' Fourth and Fourteenth Amendment rights. Lea Family contends that the Program violates the Fourth Amendment because it imposes coercive, warrantless searches of property owners' rental units as a precondition to them renting those units to others. (Doc. 4, ¶ 1.) Lea Family contends that the Program violates the Fourteenth Amendment's Equal Protection Clause because it arbitrarily applies to the owners of some rental properties but not others. (*Id*. ¶ 110.)

In its Complaint, Lea Family makes the following factual allegations in support of its claims:

- Lea Family owns and rents at least six properties in Temple Terrace that are subject to the Program. (Doc 4, ¶ 28.)

- Each of Lea Family's properties have been inspected at least once (*id*. ¶ 8) and/or repeatedly by the City since 2012 (*id*. ¶ 29).

- Lea Family has paid the "coercive" permitting fees required by the Program. (*Id*.)

- Since the Program's inception, Lea Family has paid at least $3800 in permitting fees. (*Id*. ¶ 36.)

- Lea Family has been adversely affected by the City's actions in enacting and enforcing the Program because, at all relevant times, Lea Family has been faced with criminal charges, fines, and potential loss of rental income for failing to consent to warrantless searches of its rental properties. (*Id*. ¶ 29.)

- Lea Family has not voluntarily and knowingly consented to the City's inspections. (*Id*. ¶ 30.)

- The City coerced each inspection of Lea Family's property through the implied threat of loss of property or liberty, and Lea Family continues to be coerced into providing involuntary consent to such inspections. (*Id*. ¶ 31.)

- The City coerced each and every inspection of Lea Family's properties. Lea Family consented to the searches only to avoid criminal liability and preserve its right to

continue renting out its properties. Lea Family did not voluntarily consent to any search of any of its properties. (*Id*. ¶ 33.)

- Any refusal or failure to allow an inspection results in threats from the City in the form of a "Notice of Violation." These notices threaten that failure to allow an inspection could result in referral of the case to the Municipal Code Enforcement Board. (*Id*. ¶ 34.)

- Valenti mailed Lea Family a Notice of Violation regarding its property at 827 East River Drive in 2016. (*Id*.)

- Lea Family has refused and intends to refuse all further efforts by the City to inspect its properties and collect fees from it to fund the inspection of its properties and others. (*Id*. ¶ 37.)

- Because of its refusal to allow further inspections, Lea Family is at "imminent risk" of facing criminal charges and/or loss of its property rights in response to this assertion of its Fourth Amendment rights. (*Id*. ¶ 38.)

## DISCUSSION

The City and Valenti argue that the Court should dismiss Lea Family's Complaint for several reasons. First, they argue that Lea Family does not have standing to bring this case because it has not alleged that it has suffered an injury in fact. Second, they argue that Lea Family has not adequately pled a claim under either the Fourth or Fourteenth Amendment. In addition, Valenti argues that the Court should dismiss the claims alleged against him in his personal and official capacities. Because the issue of standing implicates the Court's subject matter jurisdiction, the Court must consider that argument first.

## I.  Standing

Article III standing is the determination of whether a plaintiff is the appropriate party to bring a matter to the court for adjudication. "In essence[,] the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of the particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

The Supreme Court has articulated three requirements for Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id*. (internal citations and quotation marks omitted). Second, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id*. (internal citation and quotation marks omitted). Third, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal citation and quotation marks omitted).

The City and Valenti argue that Lea Family has no standing to file this case challenging the constitutionality of the Program because Lea Family has suffered no injury in fact. More specifically, they argue that Lea Family "has not and cannot allege that it has been subjected to warrantless, non-consensual inspections."

As discussed in section II(A)(iii)(b), infra, the Court agrees that Lea Family has not alleged that it has been subjected to any warrantless, non-consensual inspections of its

properties. However, Lea Family alleged other injuries. For example, it alleged that it has complied with a purportedly unconstitutional ordinance by providing involuntary, advanced consent for the City to inspect its properties and paying the City's rental permit fees. It also alleged that (at some unspecified point in time) it began to refuse the City's efforts to inspect its properties, and it is therefore at risk of losing its ability to rent its properties and/or facing civil or criminal penalties if it continues to rent its properties.

The Court finds these injuries sufficient to confer standing. Lea Family should be allowed to challenge the constitutionality of the Program, given that the Program regulates how Lea Family can use its properties and Lea Family is subject to penalties if it fails to comply with the Program's provisions. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967) (abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977)) (finding that sufficient injury exists to confer standing where "the regulation is directed at [the plaintiff] in particular; it requires [the plaintiff] to make significant changes in [its] everyday business practices; [and] if [the plaintiff] fails to observe the . . . rule [it is] quite clearly exposed to the imposition of strong sanctions"). Indeed, as the Supreme Court noted in *Lujan*, when a plaintiff files a lawsuit challenging the legality of government action that he is the object of, "there is ordinarily little question that the action . . . has caused him injury." 504 U.S. at 561-62.

Because Lea Family has standing to challenge the constitutionality of the Program,[1] the Court will consider whether Lea Family has sufficiently pled that the Program is unconstitutional under either the Fourth or Fourteenth Amendment.

## II. Adequacy of Pleading

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint when it fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted). It must also construe those factual allegations in the light most favorable to the plaintiff. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (internal citation omitted).

To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Pleadings that offer only "labels and

---

[1] The Court notes that Lea Family has standing to challenge the unconstitutionality of the Program only as it applies to Lea Family. Plaintiffs must assert their own legal rights and interests, not those of others. *E.g., Warth*, 422 U.S. at 499 (internal citations omitted). It is not clear from the Complaint whether Lea Family intends to argue that the Program unconstitutionally burdens its tenants' Fourth Amendment rights. For example, it describes the City's inspections as violating tenants' reasonable expectation of privacy. (Doc. 4, ¶ 81.) The Court must emphasize that Lea Family cannot make arguments on behalf of its tenants, just itself.

conclusions," or a "formulaic recitation of the elements of a cause of action," will not do. *Twombly,* 550 U.S. at 555.

**A. Adequacy of Count I - Fourth Amendment Claims**

Generally speaking, in Count I of the Complaint, Lea Family alleges that the Program violates the Fourth Amendment because it coerces warrantless inspections of property owners' rental units. This allegation can be broken down into two main components: (1) that the City has unconstitutionally infringed on Lea Family's Fourth Amendment rights by coercing it to consent to searches of its rental units ex ante, and (2) that the City has violated Lea Family's Fourth Amendment rights by mandating and conducting unreasonable searches of its rental units.

     *i.*    *Fourth Amendment Framework*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." U.S. Const. amend. IV. Government searches conducted without a warrant are per se unreasonable subject to only a few exceptions, one of which is if the government received consent to conduct the search. *City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2452 (2015) (internal citation and quotation marks omitted).

This is true not only for searches conducted by police officers for evidence of a crime, but also for administrative searches conducted for purposes of civil code enforcement. *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 534 (1967). However, in the context of an administrative search, the standard for obtaining a warrant is relaxed. *See id*. For example, to obtain a warrant to conduct an administrative

search of a rental unit for violations of a city's housing code, a city official need not have probable cause that there has been a violation of the code; instead, probable cause to issue a warrant exists if "reasonable legislative or administrative standards for conducting an inspection are satisfied" (e.g., based on the passage of time, the nature of the building, or the condition of the area). *Id*. at 534, 538.

The Supreme Court has held that the Fourth Amendment protects against searches of commercial premises as well as homes. *See v. City of Seattle*, 387 U.S. 541, 545 (1967). "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *Id*. at 543. Lower courts have since analogized the situation of a businessman to that of property owner who rents his property, holding that the owner has a Fourth Amendment right to be free from unreasonable searches of his rental units when they are not leased to or occupied by tenants. *E.g., Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 900 (N.D. Tex. 2005).

> ii.      *Has Lea Family Stated a Claim that the City Unconstitutionally Infringed on its Fourth Amendment Rights by Coercing it to Consent to Searches of its Rental Units Ex Ante?*

The Supreme Court has stated in a number of contexts that "the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government." *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) (internal citations omitted). This statement represents "an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated

rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013) (internal citations omitted). Simply put, the government cannot do indirectly that which it cannot do directly. *Id.* (internal citation omitted).

Lea Family's factual allegations, accepted as true at this stage in the litigation, plausibly allege a violation of the unconstitutional conditions doctrine. The Program requires property owners to apply for a rental permit in order to rent their properties, and the ordinance states that, "[b]y applying for a permit, the property owner consents to periodic inspections of the dwelling unit[s]." Temple Terrace, Fla., Code of Ordinances § 8-134(a). As discussed further below, the City's inspection of a rental unit that Lea Family has leased to others does not implicate Lea Family's Fourth Amendment rights, but the City's inspection of an unoccupied unit does. The City cannot legally coerce Lea Family into consenting to an inspection of its unoccupied rental units. Likewise, the City cannot withhold a benefit (i.e., the ability to rent units) from Lea Family if Lea Family chooses to exercise its Fourth Amendment right to be free from an unreasonable search of its unoccupied units. Therefore, to the extent the Program requires Lea Family to consent to unreasonable inspections of its unoccupied units in order to rent those units, the Program likely violates the unconstitutional conditions doctrine.

iii.   *Has Lea Family Stated a Claim that the City Violated its Fourth Amendment Rights by Mandating and/or Conducting Unreasonable Searches of its Rental Units?*

In its Complaint, Lea Family alleges that the Program violates the Fourth Amendment both on its face and as it is applied by the City. Lea Family argues that the Program is facially unconstitutional because it mandates that city officials conduct warrantless, non-consensual inspections of property owners' rental units. It argues that the City has unconstitutionally applied the Program's terms by conducting warrantless, non-consensual searches of its units.

a) *Facial Challenge*

A facial challenge is an attack on an ordinance itself as opposed to a particular application of that ordinance. Facial challenges are "the most difficult . . . to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Under the exacting standard the Supreme Court has prescribed for facial challenges, a plaintiff must establish that the law is unconstitutional in all of its applications. *Patel*, 135 S. Ct. at 2451 (2015) (internal citation and quotation marks omitted). But when assessing whether an ordinance meets this standard, a court should consider "only applications of the [ordinance] in which it actually authorizes or prohibits conduct." *Id*. If there is substantial ambiguity as to what conduct an ordinance authorizes, a plaintiff's claim for facial relief under the Fourth Amendment is unlikely to succeed. *Id*. at 2450 (citing *Sibron v. New York*, 392 U.S. 40, 59, 61, n. 20 (1968)).

Lea Family argues that the Program, as codified, is facially unconstitutional because it requires warrantless, non-consensual inspections of rental units. However, sections 8-133 to 8-137 of the City's Code of Ordinances do no such thing. Although section 8-135(a) notes that "dwelling units . . . will receive periodic inspections," nothing in sections 8-133 to 8-137 states that city officials must (or can) conduct a search without obtaining a warrant if no exception to the warrant requirement applies.

The Program appears to contemplate that city officials will sometimes need to obtain warrants to conduct inspections. For example, section 8-134(a) states that city officials shall not conduct a search of an occupied unit unless the tenant has consented to the search or the city official has obtained a warrant. Section 8-135(c) states that the Program is meant to supplement, not supersede, the Housing Code, and it explicitly references section 8-97 of the Code, which discusses city officials obtaining a warrant to conduct searches when the right of entry is refused. Section 8-97, for its part, directs city officials to obtain needed warrants pursuant to sections 933.20 to 933.30 of the Florida Statutes.[2]

Although sections 8-133 to 8-137 are silent regarding what action a city official can take when the property owner expresses that he or she is unwilling to consent to a search (as Lea Family has alleged it has done), that silence is at most an ambiguity in the ordinances. The Court is unwilling to read that ambiguity as requiring or authorizing city

---

[2] Sections 933.20 to 933.30 describe how state or local officials may obtain an administrative warrant (which is referred to in the Florida Statutes as an "inspection warrant").

officials to engage in unconstitutional conduct, particularly given that both the City's Code of Ordinances and the Florida Statutes discuss seeking warrants for administrative searches. This is consistent with the Supreme Court's directive that, where possible, courts should interpret enactments "so as to avoid raising serious constitutional questions." *E.g., Cheek v. United States*, 498 U.S. 192, 203 (1991).

### b) As-Applied Challenge

In addition to arguing that the Program is facially unconstitutional, Lea Family also argues that the City has applied the Program in a manner that is unconstitutional under the Fourth Amendment. Specifically, Lea Family argues that the City has used the Program to coerce warrantless (and thereby unreasonable) searches of its rental units.

Despite what Lea Family argues, it has not actually alleged that the City has conducted any warrantless searches of its rental units. In the Complaint, Lea Family alleges just that the City has inspected each of Lea Family's rental units and that Lea Family did not voluntarily consent to any of these searches. Although the Complaint describes the City's Program as generally imposing warrantless inspections, it does not allege that the City conducted any specific inspection of Lea Family's properties without a warrant.

Moreover, even if Lea Family had alleged that the City inspected its properties without a warrant, the Court would still be unable to infer that those inspections were unreasonable, or that they violated Lea Family's Fourth Amendment rights. This is primarily because Lea Family does not allege that the City conducted any inspection at a time when the units were not leased to or occupied by tenants. For purposes of the Fourth Amendment analysis, it is important that Lea Family distinguish between inspections of its

14

occupied units and inspections of its unoccupied units. As discussed in section II(A)(i), supra, Lea Family has the right to be free from unreasonable searches of its rental units while those units are unoccupied, because at those times the unit is functionally equivalent to its private commercial property. However, the Court cannot conclude that Lea Family has this same right once the unit has been leased to and/or occupied by a tenant.[3]

In determining whether a government search implicates an individual's Fourth Amendment rights, the Supreme Court has articulated two different tests. One test looks to whether the search constituted a trespass under common law, *United States v. Jones*, 565 U.S. 400, 405-06 (2012); the other test looks to whether the individual had a reasonable expectation of privacy in the area that was searched, *Katz v. United States*, 389 U.S. 347, 351, 360-61 (1967). If Lea Family's rental units were leased to and occupied by tenants at the time of the City's inspections, those inspections would not have implicated Lea Family's Fourth Amendment rights under either test.

To prove a claim of trespass to one's property, an individual must have occupancy of the property, which includes an intent to control the property and a claim of exclusive control of the property. *See* Restatement (Second) of Torts § 157, Cmt. A., § 158, Cmt. C. (Am. Law Inst. 1965). When Lea Family's units are leased, it does not occupy the units, nor does it have the ability to invite others into or exclude others from the units. As such, it cannot object to an inspection of the leased units—only the tenants can. *See Parr v.*

---

[3] It is conceivable, that under unusual circumstances, a property owner might retain a Fourth Amendment right to be free from unreasonable searches of its leased and/or occupied rental units. However, the Court need not speculate about facts not before it.

*United States*, 255 F.2d 86, 89 (5th Cir. 1958) (holding that the owner of a half interest in a property could not object to a search of the property when he had leased it and he did not have possession or the right to possession at the time of the search).

For similar reasons, Lea Family lacks a reasonable expectation of privacy in its leased, occupied rental units. An individual has a reasonable expectation of privacy in the area searched if he or she exhibited an actual expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citing *Katz*, 389 U.S. at 361). Lea Family could not have had a reasonable expectation of privacy in its leased units, given that the tenants lived there and could invite anybody they wished into their homes. *See Shamaeizadeh v. Cunigan,* 338 F.3d 535, 544-45 (6th Cir. 2003) (finding that the owner of a house had no reasonable expectation of privacy in the basement he rented out); *United States v. Dyar*, 574 F.2d 1385, 1390 (5th Cir. 1978) (holding that the owner of a leasehold interest in a property had no expectation of privacy in the property when he had given possession to another person).

For these reasons, the Court cannot reasonably infer from the Complaint that the City has conducted searches that violated Lea Family's Fourth Amendment rights. Although Lea Family has not stated a claim that the Program violates its rights against unreasonable searches and seizures, it has stated a claim that the Program violates the unconstitutional conditions doctrine. Therefore, Plaintiff can proceed to litigate Count I based on this theory of liability.

### B. Adequacy of Count II - Fourteenth Amendment Claims

In Count II of the Complaint, Lea Family alleges that the Program violates the Fourteenth Amendment's Equal Protection Clause by arbitrarily discriminating against property owners that rent properties with one to four units while refusing to regulate properties with larger numbers of units.

The Equal Protection Clause prohibits states from denying persons within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. In other words, the state must not treat an individual differently than others who are similarly situated.

To determine whether a local government's action violates the Equal Protection Clause, a court must first decide whether the action operates to disadvantage a suspect class or impinges upon a fundamental right protected by the Constitution. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 17 (1973). If it does not, then the court must uphold the government's action if it is rationally related to a legitimate state interest. *Pennell v. City of San Jose,* 485 U.S. 1, 14 (1988). In conducting this rational-basis review, the court must presume that an ordinance is constitutional, and the burden is on the challenging party "to negative every conceivable basis which might support it." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (internal citation omitted). Ultimately, a court should not overturn an ordinance on this basis unless it is "so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the legislature's actions were irrational." *Id*.

Lea Family does not allege that it is a member of a protected class or that the Program impinges on one of its fundamental rights. Accordingly, to state an equal

protection claim, Lea Family must allege facts sufficient for the Court to conclude that the Program is irrational.

Lea Family has not alleged facts sufficient for the Court to conclude that the Program irrationally discriminates against the property owners it regulates. In contrast, the City has provided several reasonable justifications for distinguishing between the rental properties subject to the Program and those that are not. For example, the City noted in its Motion to Dismiss that the Program applies only to smaller-sized rental units because the City is attempting to protect residents of rental properties that the state's jurisdiction fails to reach. The City also noted that the Program applies only to rental units that are not owner-occupied because they may not receive the same attention and upkeep as owner-occupied units.

In its Response, Lea Family acknowledges that it has not sufficiently alleged an equal protection claim. Therefore, the Court will dismiss Count II without prejudice.

## C. Adequacy of Claims Against Valenti

Lea Family filed this action against Valenti in addition to the City. It sued Valenti in both his official and individual capacity. The Complaint makes only a few references to Valenti and one allegation—that he sent a notice to Lea Family, threatening the possibility of fines if Lea Family did not comply with the Program by scheduling an inspection of its property at 827 East River Drive.[4] (Doc. 4, ¶¶ 10, 34.) Lea Family did not spell out in the

---

[4] Lea Family attached the notice referenced above to its Complaint. The notice stated that Lea Family's property was due for an inspection and requested that Lea Family call to schedule one. (Doc. 4, Ex. F.) It also stated that, if Lea Family failed to take corrective action, the City could refer its case to the Municipal Code Enforcement Board for adjudication, which could result in the

Complaint how exactly Valenti's conduct violated its constitutional rights. However, the Court can presume that it intends to argue that the notice coerced it to consent to an inspection that it would not otherwise have consented to, thereby violating the unconstitutional conditions doctrine.

Valenti argues (1) that the Court should dismiss the claims against him in his official capacity because they are duplicative to the claims against the City and (2) that it should dismiss the claims against him in his individual capacity because he is entitled to qualified immunity. The Court agrees.

### i.     *Official-Capacity Claims*

"[B]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991) (citing *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)).

In the instant case, Lea Family has sued the municipality, the City, directly in the Complaint. Keeping both the City and Valenti sued in his official capacity as defendants would be redundant, unnecessary, and possibly confusing to the finder of fact. *Busby,* 931 F.2d at 776. Therefore, the Court will dismiss the claims brought against Valenti in his official capacity with prejudice.

---

Board assessing fines against it. (*Id.*)

ii.    *Individual-Capacity Claims*

The defense of qualified immunity protects government officials performing discretionary functions of their job from being sued in their individual capacities unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The defense embodies an 'objective reasonableness' standard, giving a government agent the benefit of the doubt unless [his] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998). Because qualified immunity "shields government actors in all but exceptional cases," it "represents the rule, rather than the exception." *Id.* (internal citation and quotation marks omitted).

Qualified immunity is intended to allow government officials to perform their job duties without fear of personal liability or harassing litigation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citing *Anderson v. Creighton,* 483 U.S. 635, 638 (1987)). It is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). For this reason, courts should resolve questions of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (internal citations omitted). It is appropriate for a district court to grant a motion to dismiss based on qualified immunity "if the complaint fails to allege the violation

20

of a clearly established constitutional right." *Gonzalez*, 325 F.3d at 1233 (internal citation and quotation marks omitted).

To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority. *Harbert Intern, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (internal citation omitted). Officials act within their discretionary authority when they act pursuant to their official duties and within the scope of their authority. *Id*. at 1282 (internal citation omitted).

If the official makes this showing, the burden shifts to the plaintiff to show that qualified immunity is inappropriate. *Gonzalez*, 325 F.3d at 1234 (internal citation omitted). The plaintiff must allege facts that demonstrate both that the official has violated a constitutional right and that the right was clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). An official's conduct violates a clearly established right "when, at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal citation and quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id*. (internal citations omitted). Furthermore, to demonstrate that the law is clearly established, a plaintiff cannot describe constitutional doctrines at a high level of generality; instead, it must be able to point to law that is particularized to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal citations and quotation marks omitted).

In this case, there is no dispute that Valenti engaged in the challenged conduct pursuant to his discretionary authority as the City's Program Compliance Officer. His job duties included implementing the Program (Doc. 4, ¶ 10), and his challenged conduct involved him sending a notice to Lea Family, requesting that it comply with the Program. Given this, the Court can safely conclude that he sent the notice pursuant to his official duties and that doing so was within the scope of his authority.

Therefore, Valenti is entitled to qualified immunity unless Lea Family demonstrates that he violated a clearly established constitutional right. Lea Family argues that Valenti reasonably should have known that his conduct was illegal because he sent notices that coerced property owners to consent to warrantless searches of their properties, and it is well-settled both that warrantless searches are per se unreasonable under the Fourth Amendment and that consent to a search must be voluntary. To begin with, it is not clear that Valenti violated Lea Family's constitutional rights.[5] Moreover, even if Valenti's conduct did violate Lea Family's constitutional rights, Lea Family cannot demonstrate that those rights were clearly established by defining the law at such a high level of generality. *White*, 137 S. Ct. at 552 (internal citation omitted). Instead, it must point to precedent from either the Supreme Court or the Eleventh Circuit Court of Appeals that is more particularized and relevant to the facts of this case. *Id.*; *Wilson v. Strong,* 156 F.3d 1131,

---

[5] For example, Valenti's conduct would not have implicated Lea Family's Fourth Amendment rights unless Valenti sent Lea Family the notice threatening the possibility of fines if it did not schedule an inspection of its *unoccupied* rental property.

1135 (11th Cir.1998) (internal citation omitted). Lea Family has not done so, and the Court does not believe it can.

Although Lea Family has cited to binding precedent that discusses the unconstitutional conditions doctrine, none of those cases involve conduct factually similar to Valenti's. And although Lea Family has cited to cases discussing the constitutionality of rental housing ordinances that require inspections of rental properties, none of those cases are binding on this jurisdiction. In addition, the case law discussing the constitutionality of rental ordinances is not so uniform that every reasonable official in Valenti's position would have known that his conduct was unlawful. While some jurisdictions have struck down rental ordinances with similarities to the City's Program, other jurisdictions have upheld them. Furthermore, this case law discusses the constitutionality of the rental ordinances themselves, not whether a city official who attempts to enforce the ordinance (i.e., by mailing a notice requesting compliance) is acting unlawfully.

The Court finds it instructive that none of the cases cited by the Parties or otherwise reviewed by the Court found a city official to be personally liable for enforcing a rental ordinance that was ultimately found unconstitutional. In fact, in other contexts, courts have granted qualified immunity to city officials who enforced ordinances that were later found unconstitutional because city officials are entitled to presume that the ordinances they enforce are a valid and constitutional exercise of their city council's authority. *E.g., Acosta v. City of Costa Mesa*, 718 F.3d 800, 823–24 (9th Cir. 2013); *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102–04 (2d Cir. 2003). As the Supreme Court has noted,

officials "are charged to enforce laws until and unless they are declared unconstitutional," and "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo,* 443 U.S. 31, 38 (1979).

Valenti's conduct was not so grossly and flagrantly unconstitutional that any reasonable person would have known that he was violating the law. Indeed, this case contains a number of legal complexities. Accordingly, the Court finds that Valenti is entitled to qualified immunity, and it will dismiss the claims brought against him in his individual capacity with prejudice.

For the foregoing reasons, it is ORDERED AND ADJUDGED that:

1.  Defendant City of Temple Terrace's Motion to Dismiss Plaintiff's Complaint (Doc. 7) and Defendant Len Valenti's Motion to Dismiss Plaintiff's Complaint (Doc. 8) are partially granted as described herein.

2.  Count II of Plaintiff's Complaint (Doc. 4) is dismissed without prejudice.

3.  Plaintiff's claims against Valenti are dismissed with prejudice.

4.  Plaintiff may amend its Complaint, if it wishes, within 14 (fourteen days) of this Order.

**DONE** and **ORDERED** in Tampa, Florida, on March 29th, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record