UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEA FAMILY PARTNERSHIP Ltd.,
a Florida Limited Partnership, on behalf
of itself and others similarly situated

    Plaintiff,

v.                                                         Case No: 8:16-cv-3463-T-30AAS

CITY OF TEMPLE TERRACE,
FLORIDA, and LEN VALENTI, in his
official capacity as "Housing Compliance
Officer" and individually,

    Defendant.
_____/

# ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Class Certification (Dkt. 37), Defendant's Response in Opposition (Dkt. 38), and Plaintiff's Reply (Dkt. 41). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the Motion should be denied.

## BACKGROUND

The root of Lea Family Partnership's ("Plaintiff") lawsuit is that the City of Temple Terrace's Rental Housing Program ("the Program") is unconstitutional. The Program requires that dwelling owners complete a permit application before leasing their units. The application states that "[b]y applying for a permit, the property owner consents to the periodic inspections of the dwelling unit for violations of the minimum housing code and

1

other related codes at any reasonable time. . . ." Temple Terrace, Fla., Housing Code art. 5, div. 2, § 8-133(a) (2012). Failure to complete the application precludes owners from leasing their units.[1] Thus, Plaintiff argues, the Program "coerces" consent to inspections from owners who wish to lease their dwellings.

Plaintiff owns and rents at least six dwellings in the City of Temple Terrace ("the City"). (Dkt. 26, p.7). Plaintiff alleges that at least three of its dwellings were inspected by the City one or more times, and that Plaintiff did not voluntarily and knowingly consent to any of the inspections. (Dkt. 26, p.8). Plaintiff alleges that it has paid a total of at least $3,800 in application fees to the City since the Program began. (Dkt. 37, p.7).

In Plaintiff's Motion, Plaintiff claims that the City has "coerced" consent from potentially thousands of people by requiring all owners interested in leasing their dwellings to submit the requisite application that provides consent to inspect the dwellings. (Dkt. 37, p. 11). Plaintiff moves to certify the following class under Federal Rule of Civil Procedure 23:

> "All owners of residential dwellings located within the City of Temple Terrace: (i) whose dwelling was subject to the City's Rental Housing Ordinance Program; (ii) who submitted an initial application for the City's Rental Housing Ordinance Program at any time during the Class Period for such dwelling; (iii) who paid an initial fee to the City of Temple Terrace with their Rental Housing Ordinance Program application; and, (iv) whose dwelling was unoccupied at the time of the initial inspection performed by the City."

(Dkt. 23, p. 7-8).

---

[1] Failure to consent to the inspection is not explicitly referenced in the Program's provisions.

To define its class, Plaintiff relies on records from the City's computer software programs used to record information associated with the Program: ZOLL and SunGard NaviLine. *See* (Dkt. 37, p. 5). These programs record information such as unit owners and addresses, the amount paid for a permit application, whether an inspection has taken place, and other information. *See* (Dkt. 37, p. 5; Dkt. 37-3, p. 65-73).

## **LEGAL STANDARDS FOR CLASS CERTIFICATION**

A district court is vested with broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). For a district court to certify a class action, the party seeking to maintain the class action must affirmatively demonstrate its compliance with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 345-46 (2011). As a threshold issue, Plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable." [2] *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Assuming the class is ascertainable, Plaintiff must then prove Rule 23(a)'s prerequisites to class certification: (1) the class must be "so numerous that joinder of all members is impracticable" ("numerosity"); (2) there must be "questions of fact or law common to the class" ("commonality"); (3) "the claims or defenses of the representative parties must be typical of the claims or defenses of the class" ("typicality"); and (4) the named

---

[2] Standing is also a threshold issue, and the Court has already concluded that Plaintiff has adequate standing to assert its claim. (Dkt. 23). *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008).

representative must "fairly and adequately protect the interests of the class" ("adequacy of representation"). *See* Fed. R. Civ. P. 23(a).

After meeting the requirements of Rule 23(a), the party must satisfy through evidentiary proof at least one of the provisions of Rule 23(b). *See* Fed. R. Civ. P. 23(b). Therefore, courts may have to "probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013) (citing to Fed. R. Civ. P. 23). Only after a "rigorous analysis" and a determination that the movant has satisfied Rule 23's prerequisites may the court properly certify the class. *Id.* Accordingly, the court's analysis will frequently "overlap with the merits of the plaintiff's underlying claim [because] class determination generally involves considerations that are enmeshed in the factual and the legal issues comprising the plaintiff's cause of action." *Id.*

## **DISCUSSION**

The Court's analysis below discusses ascertainability and numerosity, the two elements of Rule 23 that Plaintiff cannot meet given the data Plaintiff has collected. [3]

I.   **Ascertainability of the Proposed Class**

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304; *Walewski v. Zenimax Media, Inc.*, 502 Fed. App'x 857, 861 (11th Cir. 2012). Courts review the merits of individual claims at the class certification stage only to the extent necessary to determine whether the requirements

---

[3] The Court makes no determination as to the other requirements of Rule 23, and only finds that at this time Plaintiff cannot meet the ascertainability and numerosity requirements.

of Rule 23 are satisfied. *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 n. 15 (11th Cir. 2003). Therefore, a class should not be certified if the court must engage in individualized determinations of disputed fact in order to ascertain a person's membership in the class. A class is ascertainable if the Court can determine whether a given person is a class member through administratively feasible methods. *See in Re Checking Account Overdraft Litigation*, 286 F.R.D. 645, 650–51, n.7 (S.D. Fla. 2012).

Plaintiff uses some of the City's records as its method for ascertaining the class. Plaintiff claims that there are two computer software programs used by the City to "document all aspects of the Rental Housing Program[:]" ZOLL and SunGard NaviLine. (Dkt. 37, p. 2, 5). Plaintiff provided the Court with data from SunGard NaviLine, which displays the amount paid for each permit application for a dwelling under the Program and the name of the owner for each associated dwelling. (Dkt. 37, Exh. G-1–G-5). Plaintiff explains that by looking at this data for paid permit application fees in the amount of $200 or $225, depending on the year the Program was in effect, Plaintiff would be able to separate out which owners paid an application fee for an unoccupied dwelling unit. (Dkt. 37, p. 5-7). Plaintiff then assumes that payment for an unoccupied unit indicates that the unit was also unoccupied during the initial inspection.

Plaintiff's assumptions are unsupported by the evidence. The deposition of Ian Kemp ("Kemp"), the City's fire chief, provides the Court with further support that Plaintiff's class is not ascertainable at this time. Plaintiff states that the City currently charges an owner a $225 fee for a permit application when the owner's dwelling is unoccupied. (Dkt. 37, p. 6). When questioned about the fee schedules recorded by SunGard

5

NaviLine, Kemp stated that the City charges a fee of $225 when an owner first files an application with the City to rent out his or her dwelling. (Dkt. 37-3, p. 77). In these instances, the $225 fee is charged even when the dwelling is occupied. *Id.* It is unclear how many times this has occurred based on the fee schedule alone.

A key element needed to define Plaintiff's class is occupancy of a unit during the unit's initial inspection. The Court agrees with the City that payment of an application fee and occurrence of an initial inspection cannot be treated as one in the same. (Dkt. 38, p. 8). Individual inquiry is required to determine whether each dwelling was unoccupied during the initial inspection, and it is not clear how Plaintiff can obtain this information. Neither ZOLL nor SunGard NaviLine captures information about occupancy during the initial inspection. (Dkt. 37-3, p. 66); (Dkt. 38-2). The Court cannot assume that unexamined data from the City that may not even exist would provide an adequate and administratively feasible way to define Plaintiff's class.

Though Plaintiff's use of SunGard NaviLine data may help to filter owners who submitted permit applications to the City, this technique does not end the foreseeable inquiries Plaintiff would need to continue to make because 1) an application fee listed as the amount the City charges for an unoccupied unit could in some instances be collected when a dwelling is actually occupied; 2) there is uncertainty as to whether the computer software systems used by the City record whether a unit was unoccupied *during the initial inspection* by the City; and 3) there is no indication that, as Plaintiff argues, references to dwelling-owners' lease agreements will clear up the missing information of whether the

6

unit was occupied *during the initial inspection* by the City. Accordingly, at this time, Plaintiff's proposed class is not clearly ascertainable.

## II. Numerosity

A plaintiff "bears the burden of making some showing, affording the court the means to make a supported factual finding that the class actually certified meets the numerosity requirement." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). Courts in the Eleventh Circuit have noted that, as a general rule, "less than twenty-one is inadequate [for a finding of numerosity], more than forty is adequate, and numbers falling in between are open to judgment based on other factors." *Id.* at 1267 (*citing Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *see also Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members").

Here, Plaintiff has identified 3,151 payments within SunGard NaviLine's records that were made by owners in the amount equal to the fees charged for permit applications for unoccupied dwellings. (Dkt. 37, p. 11). As discussed above, this number does not represent an estimate of the number of owners whose dwellings were unoccupied during initial inspection. It is unclear how many of these payments were made for unoccupied units, and further, which of these unoccupied units were unoccupied during the initial inspection. While the Court may "make common sense assumptions in order to find support for numerosity," *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir.1983), the burden is on the Plaintiff to provide some evidence to reasonably estimate the number of class members "beyond mere speculation and unsupported conclusions."

7

*Tillman v. Ally Financial, Inc.*, No. 2:16–cv–313–FtM–99CM, 2017 WL 73382, at *4 (M.D. Fla. Jan. 6, 2017).

Despite the missing data needed for the Court to analyze whether class certification is proper, Plaintiff believes that "[i]n any event, the ultimate number of Class Members will be large enough that it would not be feasible to individually join each member of the Class…." (Dkt. 37, p.11). But, Plaintiff has not demonstrated that any other individuals meeting Plaintiff's class definition even exist. Weighing heavily against class certification is the possibility that further discovery and analysis of the City's records could reveal only a handful of dwellings that were unoccupied when they were initially inspected. With such limited information available to determine a better estimate of the number of Class Members, the Court's only option is to speculate. Certification of Plaintiff's proposed class would therefore be improper, because the numerosity element of Rule 23 is not met.

At this point, Plaintiff has not provided the Court with an administratively feasible means for determining which units were unoccupied during initial inspection after owners applied for a permit application to lease the units. Plaintiff also has not provided the Court with evidence that other owners of dwellings subject to the Program had units that were unoccupied during the initial inspection. Accordingly, the Court concludes that Plaintiffs' Motion for Class Action Certification must be denied.

It is therefore ORDERED AND ADJUDGED that

1. Plaintiff's Motion for Class Certification (Dkt. 37) is DENIED.
2. The parties have ninety (90) days from the date of this Order to conduct discovery on the issue of whether the City's records, including the two computer

software programs used for enforcement of the Program, record whether a dwelling is unoccupied during initial inspection.

3. Upon expiration of the ninety (90) days, Plaintiff may refile its Motion for Class Certification if Plaintiff can present further evidence on the issues of ascertainability and numerosity.

DONE AND ORDERED at Tampa, Florida on this 19th day of September, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record